UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jasmin Queen-Gilbertson,<br><br>　　　　　　Plaintiff,<br>v.<br><br>US Auto Sales, Inc. dba US Auto Finance, Inc., Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services LLC,<br><br>　　　　　　Defendants. | Case No. |

## COMPLAINT AND JURY DEMAND

Plaintiff Jasmin Queen-Gilbertson brings this Complaint and Jury Demand against Defendants US Auto Sales, Inc. dba US Auto Finance, Inc., Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services LLC (collectively "Defendants"), and states the following allegations and claims for relief:

## PARTIES

1.　　Plaintiff, Jasmin Queen-Gilbertson (hereinafter "Plaintiff"), is a natural person who resides in the City of Greenville, County of Greenville, State South Carolina, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

2.　　Defendant, US Auto Sales, Inc., dba US Auto Finance, Inc. (hereinafter "Defendant US Auto"), is a financial institution that conducts business in the State of South Carolina. Defendant US Auto is and was, at all relevant times stated herein, a corporation with its headquarters at 2875 University Parkway, Lawrenceville, GA 30043, which

1

engaged in the practice of furnishing consumer information to consumer reporting agencies and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b). Defendant US Auto is a "person" as defined in 15 U.S.C. § 1681a(b).

3. Defendant, Experian Information Solutions, Inc. (hereinafter "Defendant Experian"), is a foreign corporation incorporated under the laws of the state of Ohio, is licensed to do business in the state of South Carolina, regularly conducts business within said State, and has a registered agent for service of CT Corporation System Inc., located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Defendant Trans Union, therefore, is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

4. Defendant, Trans Union, LLC (hereinafter "Defendant TU"), is a foreign corporation incorporated under the laws of the state of Delaware, is licensed to do business in the state of South Carolina, regularly conducts business within said State, and has a registered agent for service of The Prentice-Hall Corporation System, Inc., located at 508 Meeting Street, West Columbia, South Carolina 29169. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Defendant Trans Union, therefore, is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

5. Defendant, Equifax Information Services LLC (hereinafter "Defendant

Equifax"), is a foreign limited liability company organized under the laws of the state of Georgia; is authorized to do business in the state of South Carolina and regularly conducts business within said State; has a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309; and has a registered agent for service of The Prentice-Hall Corporation System, Inc., located at 508 Meeting Street, West Columbia, South Carolina 29169. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Defendant Trans Union, therefore, is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

## JURISDICTION

6. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681 et seq.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District, and Defendants conduct business in this District. See *Ford Motor Co. vs. Montana Eighth Judicial District Court*, 2021 WL 1132515 (U.S. March 25, 2021).

## BACKGROUND FACTS

### Processing of Credit Information

8. The national consumer reporting agencies (Trans Union, Equifax and Experian) (collectively, the "CRAs") regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

9. Defendant US Auto is a furnisher of credit information about Plaintiff to each of the CRAs.

10. The process by which CRAs receive, sort, and store information is largely electronic.

11. Furnishers report credit information to the consumer reporting agencies electronically on a periodic basis using an electronic format known as Metro 2.

12. The consumer reporting agencies take the credit information reported by these furnishers and create or associate consumer credit files.

13. Furnishers update Credit files electronically to reflect new information regarding the reported accounts (often referred to as "**tradelines**" within the industry).

14. When a furnisher wants to make a change to its reporting between reporting periods, a furnisher makes that change electronically using an electronic document known as an AUD or UDF (in some cases).

### Reinvestigation Procedures

15. When the CRAs receive a dispute from a consumer, the agencies investigate

the dispute using an automated browser-based system called the Online Solution for Complete and Accurate Reporting ("e-OSCAR"). This system was designed to provide furnishers with an online solution for processing consumer disputes.

16.     Through e-OSCAR, the CRAs send to the furnisher an Automated Credit Dispute Verification ("ACDV") which is supposed to include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute which the agency received from the consumer.

17.     Through this ACDV, the agency asks the furnisher to investigate the information in question and determine whether the information that it is reporting to the agency is correct, complete, and verifiable.

18.     Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth, and phone number) the CRA has on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

19.     The furnisher is then supposed to return the ACDV to the CRA with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted." To do this the furnisher is asked to do nothing

more than check a box.

20. If a furnisher chooses to verify the information, it will check a box called "Verified As Reported." Once checked, this will instruct the consumer reporting agency that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

21. If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

22. Whenever a furnisher directs an agency to change information on a consumer's credit file, that furnisher affirms to the CRA that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

## The Auto Loan Account

23. In March 2020, Plaintiff purchased a 2009 Toyota Venza.

24. Plaintiff secured financing for the vehicle through Defendant US Auto with a US Auto account number XX8859.

25. Defendant US Auto received and accepted payments from Plaintiff from South Carolina.

26. At some point during the auto loan, Defendant US Auto furnished the account to the CRAs with an inaccurate balance, which led to subsequent legal action initiated by Plaintiff.

## The Previous South Carolina Lawsuit

27.  On January 18, 2022, Plaintiff commenced a lawsuit against Defendant US Auto, Case No. 6:22-CV-00166, in the United States District Court for the District of South Carolina alleging claims for violations of the FCRA.

28.  On or about January 10, 2023, Plaintiff and Defendant US Auto executed a settlement agreement that required Defendant US Auto to report Plaintiff's US Auto account, bearing account number XX8859, to the CRAs in a specific manner.

29.  Plaintiff's credit reports reflected the settlement agreement terms with Defendant US Auto in December 2022 and January 2023.

30.  In February 2023, however, Defendant US Auto began reporting Plaintiff's US Auto account, bearing number XX8859, to the CRAs in a way that violated the terms of the settlement agreement and therefore reported the account inaccurately.

## **FACTUAL ALLEGATIONS**

### Facts Specific to Defendant US Auto

31.  In February 2023, Plaintiff reviewed her credit reports from the Defendant CRAs to ensure that Defendant US Auto was honoring the settlement agreement and reporting Plaintiff's US Auto account, bearing account number XX8859, to the CRAs as zero balance.

32.  As it turns out in February 2023, Defendant US Auto began reporting Plaintiff's US Auto account, bearing account number XX8859, to the CRAs differently than how Defendant US Auto agreed to report Plaintiff's account in the January 2023 settlement agreement.

33.     Specifically, in Plaintiff's February 2023 credit reports Defendant US Auto reported an outstanding balance of $10,774 on Plaintiff's US Auto account.

34.     Plaintiff called Defendant US Auto in February of 2023 and spoke with Christine Brown and told her that there was still a balance being reported contrary to the settlement agreement.  Ms. Brown stated that it would be updated and corrected.

35.     However, the following month in March of 2023 Defendant US Auto again reported that Plaintiff had an outstanding balance of $10,744 in violation of the settlement agreement.

36.     On or about April 10, 2023, Plaintiff submitted dispute letters to TU, Experian, and Equifax pursuant to 15 U.S.C. § 1681i, stating, in relevant part, that subject to the January 2022 settlement agreement, Defendant US Auto was misreporting that Plaintiff's account by a balance of $10,774, when the account should be reporting a voluntary surrender with a zero balance.

37.     The CRAs all communicated Plaintiff's dispute to Defendant US Auto in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

38.     Defendant US Auto erroneously responded to Defendant TU and Defendant Experian's ACDVs with instructions to delete the account from Plaintiff's credit reports entirely.

39.     In the alternative, Defendant US Auto failed to respond to Defendant TU and Defendant Experian's ACDV forms and both Defendant TU and Defendant Experian

deleted the entire tradeline of its own volition in violation of 15 U.S.C §1681i.

40. In either case, Defendant US Auto obviously failed to conduct a reasonable investigation into Plaintiff's disputes, failed to review all relevant information available to it, failed to communicate with the CRA, and failed to update the inaccurate account status information, in the alternative, failed to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," all in violation of 15 U.S.C. § 1681s-2(b).

41. In response to Defendant Equifax's ACDV form, Defendant US Auto erroneously responded and verified to Defendant Equifax that the account had a balance of $10,774 and verified it as being accurate when it was contrary to the January 2023 settlement agreement.

42. Once again, Defendant US Auto obviously failed to conduct a reasonable investigation into Plaintiff's dispute, failed to review all relevant information available to it (including the settlement agreement it was a party to and executed), and failed to update and/or remove the inaccurate account status information, in the alternative, failed to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," all in violation of 15 U.S.C. § 1681s-2(b).

43. In the Defendant Equifax failed to conduct a reasonable investigation pursuant to 15 U.S.C. §1681i and failed to contact Defendant US Auto and/or failed to investigate Plaintiff's dispute.

44. In May 2023, Plaintiff applied for a car loan but was denied because US Auto and Defendant Equifax were still erroneously reporting a $10,774 balance on Plaintiff's

credit report, bearing account number XX8859.

45. The car loan denial occurred at Genesis Greer in Greer South Carolina.

46. Due to major health issues, Plaintiff requires reliable transportation to attend frequent medical appointments.

47. Plaintiff having been denied credit due to Defendant US Auto's erroneous reporting and Defendant Equifax's continual reporting thereof has added significant additional stress to an already extremely stressful situation.

48. Moreover, Plaintiff has suffered damage to her credit score for Experian and Trans Union's failure to report the account as a zero balance.

49. Plaintiff has suffered actual damages in the form of hopelessness, severe stress, irritation, loss of sleep, extreme anger, frustration, anxiety, inability to obtain a car loan, and the weakening and diminishment of her credit profile, credit worthiness, debt to income ratio, and credit score, as a direct and proximate result of Defendant US Auto's violations of the Fair Credit Reporting Act as described above.

**Facts Specific to Defendant Equifax**

50. On March 26, 2023, Plaintiff filed a dispute with Defendant Equifax demanding the inaccurate balance of her US Auto account be updated to reflect a balance of $0 as required by the settlement agreement.

51. Again, on March 27 and May 8, 2023, Plaintiff filed a dispute with Defendant Equifax demanding the inaccurate balance of her US Auto account be updated to reflect a balance of $0 as required by the settlement agreement.

52. Despite numerous disputes from Plaintiff and Defendant Equifax's knowledge of the January 2023 settlement agreement between Plaintiff and Defendant US Auto, Defendant Equifax failed to update Plaintiff's credit report and instead continued to publish information on Plaintiff's credit report that Defendant Equifax knew to be false in violation of 15 U.S.C. §1681i and §1681e(b).

53. In March 2023, Defendant Equifax sold/published false consumer information about Plaintiff in connection with a car loan with reckless disregard for its truth or falsity in violation of 15 U.S.C. § 1681e(b).

54. Due to major health issues, Plaintiff requires reliable transportation to attend frequent medical appointments.

55. Plaintiff having been denied credit due to Defendant Equifax's erroneous reporting and publishing/selling has added significant additional stress to an already extremely stressful situation.

56. Plaintiff has suffered actual damages in the form of hopelessness, severe stress, irritation, loss of sleep, extreme anger, frustration, anxiety, inability to obtain a car loan, and the weakening and diminishment of her credit profile, credit worthiness, debt to income ratio, and credit score, as a direct and proximate result of Defendant Equifax's violations of the Fair Credit Reporting Act as described above.

### Facts Specific to Defendant TU and Defendant Experian

57. As mentioned above, On April 10, 2023, Plaintiff sent a dispute letter to Defendant TU and Defendant Experian demanding the inaccurate balance of $10,774 on

Plaintiff's US Auto loan account be updated to a $0 balance on her credit reports as required by a settlement agreement between Plaintiff and Defendant US Auto.

58. Defendant TU through its reinvestigation on or about June 5, 2023, however, caused to be deleted Plaintiff's entire US Auto tradeline for the auto loan account number XX8859, a positive tradeline in that it was paid in full, thereby depriving Plaintiff of an accurate and true credit history, in violation of 15 U.S.C. § 1681i.

59. Defendant Experian through its reinvestigation on or about June 13, 2023, however, caused to be deleted of Plaintiff's entire US Auto tradeline for the auto loan account number XX8859, a positive tradeline in that it was paid in full, thereby depriving Plaintiff of an accurate and true credit history, in violation of 15 U.S.C. § 1681i.

60. Plaintiff is damaged by the deletion of her auto loan tradeline that, if correctly reported, is an asset to her creditworthiness and credit score.

61. Upon information and belief, since the deletion of Plaintiff's auto tradeline, Defendants TU and Experian owned, maintained, and sold/published false consumer information about Plaintiff to others without all the information it has in its database concerning Plaintiff in violation of 15 U.S.C. § 1681e.

62. Defendant TU and Defendant Experian's conduct, specifically their failure to maintain reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer report, entirely deleting the US Auto tradeline, and publishing inaccurate information has caused Plaintiff immense frustration, anger, hopelessness, anxiety, loss of sleep, mental anguish, despair, marital discord, emotional distress, embarrassment, loss of

credit opportunities, increased costs to an on-going home improvement project, and the weakening of her credit profile, credit worthiness, and credit score.

## TRIAL BY JURY

63. Plaintiff is entitled to, and hereby demands, a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.
### VIOLATION OF THE FAIR CREDIT REPORTING ACT –
### 15 U.S.C. § 1681 *et seq*.
### AGAINST DEFENDANT US AUTO

64. Plaintiff incorporates by reference all the above paragraphs of this Complaint as thoughtfully stated herein.

65. Defendant US Auto violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information and failing to update and/or remove the inaccurate balance information or, in the alternative, to report the account as "disputed" by changing the Metro II CCC to "XB."

66. As a result of Defendant US Auto's violations of the FCRA, Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, extreme anger, frustration, humiliation, anxiety, inability to obtain a car loan, and the weakening and diminishment of her credit profile, credit worthiness, debt to income ratio, and credit score, in an amount to be determined at trial.

67. Defendant US Auto's conduct, actions, and inactions were willful, rendering

it liable for damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

68. Alternatively, Defendant US Auto's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

69. Plaintiff is entitled to recover actual damages, statutory and punitive damages, and costs and attorney's fees from Defendant US Auto in an amount to be determined by the Court, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.
## VIOLATION OF THE FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681 *et seq*.
## AGAINST DEFENDANT EQUIFAX

70. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

71. Defendant Equifax violated the FCRA by furnishing Plaintiff's credit report to entities without following reasonable procedures and without ensuring the maximum possible accuracy of the information contained therein, in violation of 15 U.S.C. § 1681e(b).

72. Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

73. Alternatively, Defendant Equifax's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

74. As a result of Defendant Equifax's violations of the FCRA, Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, extreme anger, frustration, humiliation, anxiety, inability to obtain a car loan, and the weakening and diminishment of her credit profile, credit worthiness, debt to income ratio, and credit score, in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

75. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III.
## VIOLATION OF THE FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681 *et seq*.
### AGAINST DEFENDANT EXPERIAN AND DEFENDANT TU

76. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

77. Defendants Experian and TU failed to follow reasonable procedures to assure the maximum possible accuracy of a consumer report regarding Plaintiff in violation of 15 U.S.C. § 1681e.

78. Defendants Experian and TU knowingly and intentionally committed an act in conscious disregard for Plaintiff's rights to have an accurate credit report available to credit grantors.

79. Defendants' Experian and TU owned, maintained, and sold/published consumer information about Plaintiff with reckless disregard for its truth or falsity.

80. That this willful action thereby deprived Plaintiff of accurate consumer information stored on Defendant Experian and Defendant TU's database.

81. Defendant Experian and Defendant TU violated 15 U.S.C. §1681i by failing to reasonably reinvestigate Plaintiff's disputed information.

82. Defendants Experian and TU's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court pursuant to 15 U.S.C. § 1681n.

83. Alternatively, Defendants Experian and TU's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

84. As a result of Defendants Experian and TU's violations of the FCRA, Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, extreme anger, frustration, humiliation, anxiety, inability to obtain a car loan, and the weakening and diminishment of her credit profile, credit worthiness, debt to income ratio, and credit score, in an amount to be determined at trial, pursuant to 15 U.S.C. §1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendants Experian and TU in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IV.
## BREACH OF CONTRACT
## AGAINST DEFENDANT US AUTO

86. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

87. Plaintiff and Defendant US Auto signed a settlement agreement in the matter of *Queen-Gilbertson v. Trans Union*, Case No. 6:22-CV-00166, and the case was dismissed.

88. The settlement between the parties required Defendant US Auto to report Plaintiff's US Auto account, bearing account number XX8859, to the CRAs in a specific manner.

89. Plaintiff's credit reports reflected the settlement agreement terms with Defendant US Auto in December 2022 and January 2023.

90. In February 2023, however, Defendant US Auto began reporting Plaintiff's US Auto account, bearing number XX8859, to the CRAs in a way that violated the terms of the settlement agreement and therefore reported the account inaccurately.

91. All claims between the parties were released and resolved.

92. Despite the fact that the parties executing the Settlement Agreement and Release Defendant US Auto has failed to provide Plaintiff with clear tradeline reporting, in breach of the settlement agreement.

93. Plaintiff is entitled to recover actual damages for breach of the settlement agreement, plus attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants for:

- an award of actual damages caused by Defendants' violations of the FCRA, pursuant to 15 U.S.C. § 1681n and § 1681o;
- an award of punitive damages against Defendants for their willful noncompliance with the FCRA, pursuant to 15 U.S.C. § 1681n;
- an award of costs and attorney's fees against Defendants, pursuant to 15 U.S.C. § 1681n and § 1681o;
- an award of actual damages and attorneys' fees for Defendant US Auto's breach of the January 2023 settlement agreement; and
- such other and further relief as the Court may deem just and proper.

Dated this 11th day of July 2023

Respectfully submitted,

By: s/Andrew M. Connor

Andrew M. Connor, Esq.
Attorney I.D. #: 11191
andrew@connor.law
1501 Belle Isle Avenue | Suite 110
Mount Pleasant, SC 29464
T 843.606.1578
F 843.606.1578

Thomas J. Lyons Jr., Esq.
Attorney I.D. #: 0249646
367 Commerce Court
Vadnais Heights, MN 55127
(651) 770-9707
(651) 704-0907 Fax
tommy@consumerjusticecenter.com
(*To Be Admitted Pro Hac Vice*)

*ATTORNEYS FOR PLAINTIFF*