IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jasmin Queen-Gilbertson, | C.A. No. 6:23-cv-03331-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| U.S. Auto Sales, Inc. dba U.S. Auto Finance, Inc., and Westlake Portfolio Management, LLC, | |
| Defendants. | |

This matter is before the Court on Defendant Westlake Portfolio Management, LLC's ("Defendant Westlake") Motions to Compel Arbitration and to Dismiss and for Protective Order and to Stay Discovery. ECF Nos. 55, 60. Plaintiff filed a Response in Opposition to the Motions to Compel Arbitration and to Dismiss, and Defendant Westlake filed a Reply. ECF Nos. 56, 58. For the reasons set forth below, the Motion to Compel Arbitration is granted, the Motion to Dismiss is denied, and the Motions for Protective Order and to Stay Discovery are denied as moot.

## **BACKGROUND**

This case arises from the alleged erroneous reporting of a balance on Plaintiff's credit report. ECF No. 41 at 9–10. In March 2020, Plaintiff purchased a 2009 Toyota Venza and secured financing for the purchase through Defendant U.S. Auto Finance, Inc. ("Defendant U.S. Auto"). *Id.* at 6. In the Purchase Agreement, "Plaintiff acknowledged and initia[led] that she and [Defendant] U.S. Auto signed a separate [A]rbitration

[A]greement attached and incorporated into the [Purchase Agreement]."[1]  ECF No. 55-1 at 1–2; 55-2 at 2.  The Arbitration Agreement states, in part, that:

> Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the purchase, financing, or lease of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Arbitration Agreement, such as an assignee of the Contract or Lease Agreement) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. This is called the "class action waiver."

ECF No. 55-2 at 14.  Thereafter, Defendant U.S. Auto furnished the account to consumer reporting agencies with an inaccurate balance, and a lawsuit was filed by Plaintiff against Defendant U.S. Auto on January 18, 2022 in this District.  ECF No. 41 at 6–7.  On January 10, 2023, "Plaintiff and Defendant U[.]S[.] Auto executed a [S]ettlement [A]greement that required Defendant U[.]S[.] Auto to report Plaintiff's U[.]S[.] Auto account . . . to the [credit reporting agencies] in a specific manner."  *Id.* at 7.  The Settlement Agreement states, in part, the following:

> This Agreement is the entire, final, and complete agreement of the Parties relating to the subject of this Agreement and supersedes and replaces all prior or existing written and oral agreements between the Parties. No amendment or modification of this Agreement shall be effective unless in a

---

[1] The recitation of facts is taken from the Amended Complaint; however, the Court recites this fact from Defendant Westlake's Motions to Compel Arbitration and to Dismiss because Plaintiff's Amended Complaint makes no reference to the Purchase Agreement; nor does Plaintiff attach it as an exhibit.  The Court also notes that while Plaintiff may dispute the applicability of the Purchase Agreement to the present case, Plaintiff does not dispute the language contained therein.

>  writing executed by all Parties. This Agreement shall be interpreted as if all Parties participated in its preparation.

ECF No. 56-1 at 2.  However, in February 2023, Defendant U.S. Auto began reporting Plaintiff's account in a manner that allegedly violated the terms of the Settlement Agreement.  ECF No. 41 at 7.  Specifically, Defendant U.S. Auto reported an outstanding balance of $10,774.00 instead of a voluntary surrender with a balance of $0.00.  *Id.* at 8.

On April 10, 2023, Plaintiff submitted dispute letters to former Defendants Experian Information Solutions, LLC ("Defendant Experian"), Trans Union, LLC ("Defendant Trans Union"), and Equifax Information Services, LLC ("Defendant Equifax").[2]  *Id.*  Defendants communicated Plaintiff's dispute to Defendant U.S. Auto through automated consumer dispute verification ("ACDV") forms.  *Id.*  Defendant U.S. Auto instructed Defendants Experian and Trans Union "to delete the account from Plaintiff's credit reports entirely[,]" and they thereafter instead deleted Plaintiff's entire U.S. Auto tradeline.  *Id.* at 8–9, 12.  In response to Defendant Equifax's ACDV form, Defendant U.S. Auto reported an account balance of $10,774.00, allegedly in violation of the Settlement Agreement.  *Id.* at 9.  Despite the dispute filed with Defendant Equifax, it continued to report the inaccurate balance on Plaintiff's U.S. Auto Account.  *Id.* at 11.  At some point following the Settlement Agreement, Defendant U.S. Auto transferred, sold, or assigned Plaintiff's account to Defendant Westlake.  *Id.* at 13.  Defendant Westlake did not accept Plaintiff's dispute regarding the account balance and allegedly "placed over 15 collection calls to her."  *Id.*

---

[2] On January 10, 2024, Plaintiff filed a stipulation of dismissal with prejudice as to Defendants Experian and Trans Unions.  ECF No. 57.  On March 20, 2024, Plaintiff filed a stipulation of dismissal with prejudice as to Defendant Equifax.  ECF No. 62. Accordingly, Defendant Experian, Trans Union, and Equifax are no longer parties to the present case.

3

In May 2023, Plaintiff applied for a car loan at Genesis Greer located in Greer, South Carolina but was denied. *Id.* at 9–10.

On July 13, 2023, Plaintiff filed a Complaint asserting causes of action for violations of the Fair Credit Reporting Act and for breach of contract. ECF No. 1 at 13–17. Defendant Trans Union filed an Answer on August 10, 2023, and Defendants Experian and Equifax filed Answers on September 11, 2023. ECF Nos. 13, 19, 20. On October 11, 2023, Plaintiff filed an Amended Complaint that added Defendant Westlake and a cause of action for violations of the Fair Debt Collection Practices Act ("FDCPA") against it. ECF No. 41 at 19. Defendants Equifax, Trans Union, and Experian filed Answers to the Amended Complaint on October 25, 2023. ECF Nos. 46, 47, 48. On November 13, 2023, Defendant Westlake filed an Answer to the Amended Complaint. ECF No. 50. On December 19, 2023, Defendant Westlake filed Motions to Compel Arbitration and to Dismiss. ECF No. 55. Plaintiff filed a Response in Opposition on January 3, 2024, and on January 10, 2024, Defendant Westlake filed a Reply. ECF Nos. 56, 58. On January 26, 2024, Defendant Westlake filed Motions for Protective Order and to Stay Discovery. ECF No. 60. Accordingly, this matter is ripe for review.

## APPLICABLE LAW

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same

4

footing as other contracts.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id*. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A party seeking to compel arbitration must do so by establishing the following four elements:

> (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute.

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *see also Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Energy Absorption Sys. v.*

5

*Carsonite Int'l*, 377 F. Supp. 2d 501, 504 (D.S.C. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002).

## **ANALYSIS**

Defendant Westlake contends that the "Court should compel Plaintiff's claims against [it] to arbitration." ECF No. 55-1 at 4. Defendant Westlake argues that the Purchase Agreement includes a specific and clear Arbitration Agreement whereby Plaintiff and Defendant U.S. Auto, or a successor or assign thereof, agreed to arbitrate claims at the election of either party related "to the purchase, financing or lease" of the Toyota Venza. *Id.* In addition, Defendant Westlake asserts that the Arbitration Agreement is valid and enforceable, in part, because both Plaintiff and a representative of Defendant U.S. Auto signed it. *Id.* at 5. Defendant Westlake also asserts that Plaintiff's claim falls within the Arbitration Agreement because Plaintiff's "FDCPA claim against [Defendant] Westlake arises out of and relates to Plaintiff's purchase of the vehicle and [Defendant] Westlake's attempt to collect the amounted owed on the Contract." *Id.* at 6. Moreover, Defendant Westlake contends that because Plaintiff's claim is subject to the

6

Arbitration Agreement, it should be dismissed from the present case. *Id.*

In contrast, Plaintiff contends that "[t]he Settlement Agreement supersedes the Arbitration Agreement, or in the alternative, demonstrates the Parties did not intend the Arbitration Agreement's authority to extend beyond termination of the original Contract." ECF No. 56 at 3. Plaintiff relies, in part, on the language in the Settlement Agreement that states that "this agreement is the entire, final, and complete agreement of the Parties relating to the subject of this Agreement and supersedes and replaces all prior or existing written and oral agreements between the Parties." *Id.* at 4. Plaintiff also argues that the Settlement Agreement expressly revokes the Purchase Agreement and Arbitration Agreement because the Settlement Agreement specifically references "the account related to the 2009 Toyota Venza, which was financed under the Motor Vehicle Retail Installment Sales Contract[.]" *Id.*

In the alternative, Plaintiff asserts that the Settlement Agreement and language contained therein stating that it was "the entire, final, and complete agreement" between Plaintiff and Defendant U.S. Auto, combined with the broad language in the Arbitration Agreement, demonstrates that neither Plaintiff nor Defendant U.S. Auto agreed to arbitrate the present dispute. *Id.* 4, 7. Plaintiff contends that her claims do not relate to the purchase, financing, or leasing of the vehicle but instead specifically relate to the terms of the Settlement Agreement and Defendants' failure to comply with its terms. *Id.* at 6. Further, Plaintiff argues that there is no significant relationship between the Purchase Agreement and Plaintiff's FDCPA claim against Defendant Westlake because Defendant Westlake's alleged breach of the terms of the Settlement Agreement exists independently from the Purchase Agreement entered into by Plaintiff and Defendant U.S.

7

Auto.  *Id.* at 7–8.   Lastly, Plaintiff asserts that the case should not be dismissed for the aforementioned reasons.  *Id.* at 8.

In response, Defendant Westlake contends that Plaintiff's FDCPA claim "is clearly within the scope of the arbitration agreement" and "must be arbitrated[.]"  ECF No. 58 at 3.  Defendant Westlake also argues that because Plaintiff alleges that Defendant Westlake attempted to collect on a debt arising out of the purchase of the Toyota Venza in violation of the Settlement Agreement, the Purchase Agreement and Arbitration Agreement are connected to Plaintiff's claim against Defendant Westlake.  *Id.*  Defendant relies on language in the Settlement Agreement, specifically that "[t]his agreement is the entire, final, and complete agreement of the Parties relating to the subject of this Agreement" to assert that the Settlement Agreement only supersedes previous versions of the Settlement Agreement and any oral representation related to it.  *Id.* at 4.

Having reviewed the arguments and submissions of the parties, the Court grants Defendant Westlake's Motion to Compel Arbitration.  "Parties can agree to arbitrate . . . 'gateway' questions of arbitrability through a delegation clause."  *Harris v. Equifax Info. Servs.*, C.A. No. 2:18-cv-00558, 2019 WL 1714218, at *3 (S.D.W. Va. Apr. 17, 2019) (citations omitted).  The delegation clause "is treated as a severable, additional agreement[.]" *Id.* (citations omitted).  In addition, it "must contain 'clear and unmistakable' language showing that the parties intended 'to delegate disputes regarding arbitrability to the arbitrator.'"  *Id.* (quoting *Novic v. Credit One Bank, N.A.*, C.A. No. 17-cv-2168, 2019 WL 103878, at *2 (4th Cir. Jan. 4, 2019).  "[T]he federal common law of arbitrability provides that an arbitration provision in a contract is presumed to survive the expiration of the agreement."  *Harris v. Equifax Info. Servs.*, C.A. No. 2:18-cv-00558, 2019 WL

8

4438034, at *2 (S.D.W. Va. Sept. 16, 2019) (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998)).

Here, the Court finds that the delegation clause contained in the Purchase Agreement requires the present case to be arbitrated.  The Arbitration Agreement contained in the Purchase Agreement includes a delegation clause, which states that:

> Any claim or dispute, whether in contract, tort or otherwise (*including the interpretation and scope of this clause and the arbitrability of any issue*), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the purchase, financing, or lease of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Arbitration Agreement, such as an assignee of the Contract or Lease Agreement) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action.

ECF No. 55-2 at 14 (emphasis added).  As indicated above, the delegation clause contains "clear and unmistakable" language that Plaintiff and Defendant U.S. Auto "intended to 'delegate disputes regarding arbitrability to the arbitrator.'"  *Harris*, 2019 WL 1714218, at *3 (quoting *Novic*, 2019 WL 103878, at *2).  Pursuant to the delegation clause, "any claim or dispute," which implicitly includes disputes regarding arbitrability, must "be resolved by neutral, binding arbitration and not by a court action."  ECF No. 55-2 at 14.  As a result, the delegation clause, as a separate agreement, requires an arbitrator, not this Court, to decide arbitrability.  In addition, even if the Settlement Agreement supersedes the Purchase Agreement, the Arbitration Agreement is presumed to survive.  *See Harris*, 2019 WL 4438034, at *2 (citing *Riley Mfg. Co.*, 157 F.3d at 781). To the extent that Plaintiff argues that the Settlement Agreement revokes the Purchase Agreement and Arbitration Agreement, the Settlement Agreement does not reference the

9

Arbitration Agreement but instead "is the entire, final, and complete agreement of the Parties relating to the *subject of* this Agreement[,]" ECF No. 56-1 at 2 (emphasis added), which is the underlying litigation between Plaintiff and Defendant U.S. Auto, not Defendant Westlake.  Accordingly, Defendant Westlake's Motion to Compel Arbitration is granted.

## CONCLUSION

Based on the foregoing, the Motion to Compel Arbitration [55] is **GRANTED**. Defendant Westlake also requests that it be dismissed from the present case.  Dismissal of the Amended Complaint is inappropriate at this time because the Amended Complaint asserts a cause of action against Defendant U.S. Auto, who is currently in bankruptcy proceedings.  *See* ECF No. 25; *see also See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (holding that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "a proper remedy"). In addition, pursuant to the delegation clause, the arbitrator may find that this matter is not subject to arbitration, and this suit may continue.

Accordingly, the Court finds a stay is the more appropriate course of action. Therefore, the Motion to Dismiss [55] is **DENIED**.  Defendant Westlake's Motions for Protective Order and to Stay Discovery [60] are **DENIED** as moot.  This action is stayed. It is stayed as to Defendant U.S. Auto per the automatic stay imposed on parties in pending bankruptcy proceedings.  It is stayed as to Defendant Westlake for arbitration. The Court directs the parties to submit a joint status report within 90 days of the entry of this Order.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

June 20, 2024
Spartanburg, South Carolina